UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

FREDRICK DAVID CRAFT,

    Plaintiff,

    v.                                        Cause No. 2:22-CV-367-PPS-APR

OFFICER GARZA, *et al.*,

    Defendants.

## OPINION AND ORDER

Frederick David Craft, a prisoner proceeding without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. [DE 11.] In accordance with 28 U.S.C. § 1915A, I must review the complaint to determine whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Craft is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Craft alleges that around 2:30 a.m. on September 27, 2020, he was leaving the Nightclub Loft Adiq Ultra Lounge in Gary, Indiana. He states that many other people were leaving the lounge at that time, as it had just closed for the night. He claims he

1

was walking to his vehicle when he "overheard a seemingly heated argument taking place close by me," at which point "gunfire erupted." He states that he "ran for cover," but felt a "searing hot pain" in his right leg. He claims he continued to run but was shot several more times. He claims he began screaming for help, at which point he saw Officer Tyler Knotts, a Gary police officer. He claims that Officer Knotts handcuffed him and left him there for approximately 15 minutes. When the officer returned, he was placed under arrest. He states that he was then taken from the scene to a hospital for treatment.

He claims he was subsequently charged with murder and attempted murder as a result of this incident. Public records reflect that he was convicted of both charges.[1] *See State v. Craft*, 21A-CR-2004 (Ind. Ct. App. May 12, 2022). In his direct appeal, the Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> A jury convicted Craft of murder and attempted murder after a shooting on September 27, 2020. The crime occurred in the empty lot just north of Loft Adiq, an entertainment venue on the 700 block of Broadway in Gary. Around 2:30 a.m., patrons were flowing out of the club to cars parked in the empty lot when a burst of rapid gunfire sounded—more than 50 shots in mere seconds. Officers Tyler Knotts and Martin Garza were already on the scene, as police were regularly dispatched to Loft Adiq around last call to control the crowds and deter criminal activity. . . .
>
> Officer Knotts testified that he ran to the southeast corner of the parking lot when the shots rang out. There, he saw two shooters firing at Officer Garza, but they quickly disappeared. Officer Knotts then saw two men running toward him. One of them, later identified as Craft, was wearing a red and black bulletproof vest bearing the logo for Craft's company, Dads

---

[1] I am permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647-48 (7th Cir. 2018).

2

with Glizzys.[2] The other man held something dark in his hand. Officer Knotts told the men to stop, show their hands, and get on the ground. Craft complied and yelled, "Help. I've been shot." The other man ran toward the alley on the west side of the lot. Officer Knotts did not see the men exchange anything. Only seconds had elapsed between Officer Knotts exiting his car and stopping Craft.

Officer Garza soon ran over to Officer Knotts and advised that Craft had just shot someone. While other officers took Craft into custody, Officer Knotts observed Kevin Blackmon—the shooting victim—lying face down in the parking lot. . . .

Unlike Officer Knotts, Officer Garza only saw a single shooter—a black man wearing light-colored pants, a white T-shirt, and a black bulletproof vest—firing a handgun in the southeast corner of the lot and moving toward the middle of the lot. Officer Garza later identified this man as Craft and testified, "He was firing a semiautomatic handgun, one that looks similar to the one I carry for work." Officer Garza saw Craft fire at Blackmon, who fell face first to the ground. When Officer Garza yelled for Craft to drop his weapon, Craft turned his fire on Officer Garza instead, backpedaling to hide behind a parked Ford Focus. During this exchange of gunfire, Officer Garza believes he shot Craft. Seconds later, Craft emerged from behind the car, stumbled to the ground and crawled along one of the buildings. Officer Garza ran over to Craft and handcuffed him.

About 20 seconds elapsed from the time Officer Garza first heard shots to when he apprehended Craft. Officer Garza then heard more gunfire to the northwest, in the alley along the lot. He testified that he told Officer Knotts to stay with Craft as he ran toward the shots in the alley. Officer Garza never searched Craft for weapons. After the gunfire subsided, police collected 111 bullet casings at the scene. They discovered two guns in the alley. They also discovered three guns in Craft's locked Jeep Grand Cherokee, which was parked in the northwest corner of the lot. These included a 9-millimeter Glock handgun with an extended double-barrel magazine (Modified Glock). The firearm examiner testified that 85 of the casings found at the scene were fired by the Modified Glock, which had been converted into an automatic weapon. Two of the bullet fragments recovered from Blackmon's body could be excluded from all

---

[2] The Indiana Court of Appeals noted that "Glizzy" is slang for a Glock, a type of handgun. *Craft*, 21A-CR-2004, slip op. at 4 n.3.

>the firearms collected at the scene except for the Modified Glock. DNA testing showed multiple people touched the weapons found at the scene, likely including Craft.

*Craft,* 21A-CR-2004, slip op. at 2-5 (internal citations, headnotes, and footnotes omitted).

Mr. Craft was convicted by a jury in 2021 and was sentenced to serve 55 years in prison. *State v. Craft*, 45G03-2009-MR-000039 (Lake Sup. Ct. closed Aug. 20, 2021). His conviction was affirmed on direct appeal. *Craft,* 21A-CR-2004, slip op. at 9-15. He later filed a post-conviction petition in state court, but then withdrew it in December 2022. *State v. Craft*, 45G03-2209-PC-000022 (Lake Sup. Ct. closed Dec. 15, 2022).

In the present case, he sues Officers Garza and Knotts, as well as their employer the Gary Police Department, for monetary damages. He claims that he was unarmed on the date of this incident and "vehemently" denies that he committed murder or attempted murder. He claims that "Officer Garza shot me in the back while I was unarmed and posing no threat to anyone." He further claims that Officer Knotts did not have a warrant for his arrest and did not have probable cause to arrest him because he was unarmed and was not doing anything other than trying to leave the club. He claims that Officer Knotts also fabricated reports and "lied under oath" at trial "by denying that he watched Officer Garza shoot me in my back while I was clearly unarmed and posed no threat to anyone." He additionally claims that the Gary Police Department has a policy or custom of allowing its officers to use excessive force, and that the Department denied him evidence that would have proved his innocence.

I understand Mr. Craft to be alleging claims for false arrest, malicious prosecution, wrongful conviction, and excessive force. As to the false arrest claim, the Fourth Amendment protects individuals from an arrest without probable cause. *Dollard v. Whisenand*, 946 F.3d 342, 353–54 (7th Cir. 2019). "Probable cause exists to arrest a suspect if at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Id.* at 354 (citation omitted).

Suits filed under 42 U.S.C. § 1983 borrow the statute of limitations for state personal injury claims, which in Indiana is two years. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The date on which the claim accrues, and the limitations period starts running, is the date when a plaintiff knows the fact and the cause of an injury. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). The statute of limitations for a claim for false arrest begins to run upon initiation of legal process. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020) (en banc). Here, Mr. Craft alleges that was arrested on September 27, 2020, and that upon his release from the hospital, he was formally charged with murder and attempted murder. The public docket in the criminal case reflects that a probable cause hearing was held on September 28, 2020. *Craft*, 45G03-2009-MR-000039 (docket entry Sept. 28, 2020). The statute of limitations started running on that date, and it evident from Mr. Craft's allegations that he was aware of his injuries and their cause at that time. His original

5

complaint was signed and tendered for filing on November 29, 2022, more than two years later.[3] (ECF 2 at 10-11.) Therefore, the false arrest claim is untimely. Although untimeliness is an affirmative defense, dismissal at the pleading stage is permitted where it is evident from the face of the complaint that the claims are untimely. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is satisfied here.

Mr. Craft also asserts claims for wrongful conviction and malicious prosecution. In support of these claims, he asserts that he is not guilty of murder or attempted murder, did not have a firearm on the date in question, and did not shoot at or otherwise pose a threat to anyone. However, he cannot challenge his state criminal conviction in this civil rights action. *Preiser v. Rodriguez,* 411 U.S. 475, 488 (1973). Nor can he pursue a claim for money damages based on an allegation that he did not have a firearm and did not shoot anyone, and that the police fabricated evidence to obtain a conviction, because such a claim rests on a presumption that his conviction is invalid. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Savory*, 947 F.3d at 417 (claims of "suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction" are barred by *Heck,* because "[t]here is no logical way to reconcile those claims with a valid conviction"). Such claims cannot be brought unless and until his conviction is "reversed on direct appeal, expunged by executive order, declared

---

[3] I will presume that the present complaint "relates back" to the original complaint. *See* FED. R. CIV. P. 15(c).

6

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. There is no indication from the complaint this has occurred; instead, public records reflect that his efforts to overturn his conviction to date have been unsuccessful. Therefore, his claims must be dismissed without prejudice. *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) ("A suit barred by the doctrine of *Heck* is premature and must be dismissed without prejudice, because *Heck* holds that the claim does not accrue until the conviction has been set aside.").

Excessive force claims are not always inconsistent with an outstanding conviction.[4] *See id*. Here, however, Mr. Craft claims that he was unarmed, did not shoot at Officer Garza or Mr. Blackmon, and was not doing anything wrong when police shot him. These allegations are incompatible with his outstanding conviction, which was based on a factual determination that he had a firearm on the date in question, which he used to shoot at Officer Garza and to kill Mr. Blackmon. *See id.* (*Heck* bars excessive force claim where the plaintiff contends, in effect, "that the police attacked an innocent bystander"); *Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016) (excessive force claim was barred by *Heck* because "if the incident unfolded as [the plaintiff] alleges in his civil suit, then he could not have been guilty of aggravated battery of a peace officer

---

[4] I note that Mr. Craft's false arrest claim also does not implicate *Heck*. *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) ("[A]n arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction[.]").

7

because the officer shot him without provocation"). This claim must be dismissed pursuant to *Heck*.

As a final matter, Mr. Craft names the Gary Police Department as a defendant. His claims against the Department are not viable, however, because the Gary Police Department cannot be sued under § 1983. *See McMillian v. Monroe County*, 520 U.S. 781, 786 (1997) (local government liability under § 1983 "is dependent on an analysis of state law"); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued.").

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Although it appears unlikely Mr. Craft can overcome the untimeliness bar or *Heck*, in the interest of justice, I will allow him an opportunity to amend his complaint if, after reviewing this order, he believes he can state a claim for relief, consistent with the allegations he has already made under penalty of perjury.

For these reasons, the Court:

(1) **GRANTS** the plaintiff until **June 12, 2023**, to file an amended complaint if he so chooses; and

(2) **CAUTIONS** him that if he does not respond by that deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A.

**SO ORDERED** on May 12, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT