UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

FREDRICK DAVID CRAFT,

    Plaintiff,

    v.                                           Cause No. 2:22-CV-367-PPS-APR

OFFICER GARZA,

    Defendant.

## OPINION AND ORDER

Frederick David Craft, a prisoner proceeding without a lawyer, filed a second amended complaint under 42 U.S.C. § 1983. [DE 19.] In accordance with 28 U.S.C. § 1915A, I must review the complaint to determine whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Craft is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

This is Mr. Craft's third attempt to plead his claims. He filed an original complaint, which he subsequently amended. I screened his amended complaint under 28 U.S.C. § 1915A and concluded that it did not state a claim upon which relief could be

1

granted. I afforded him an opportunity to file a second amended complaint before dismissing the case, and he responded with the present filing.

Mr. Craft's claims stem from events occurring on September 27, 2020, which resulted in him being convicted of murder and attempted murder.[1] *Craft v. State*, 187 N.E.3d 340, 342 (Ind. Ct. App. 2022), *trans. denied*, 193 N.E.3d 378 (Ind. 2022). In affirming his conviction on direct appeal, the Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> The crime occurred in the empty lot just north of Loft Adiq, an entertainment venue on the 700 block of Broadway in Gary. Around 2:30 a.m., patrons were flowing out of the club to cars parked in the empty lot when a burst of rapid gunfire sounded—more than 50 shots in mere seconds. Officers Tyler Knotts and Martin Garza were already on the scene, as police were regularly dispatched to Loft Adiq around last call to control the crowds and deter criminal activity. . . .
>
> Officer Garza only saw a single shooter—a black man wearing light-colored pants, a white T-shirt, and a black bulletproof vest—firing a handgun in the southeast corner of the lot and moving toward the middle of the lot. Officer Garza later identified this man as Craft and testified, "He was firing a semiautomatic handgun, one that looks similar to the one I carry for work." Officer Garza saw Craft fire at [Kevin] Blackmon, who fell face first to the ground. When Officer Garza yelled for Craft to drop his weapon, Craft turned his fire on Officer Garza instead, backpedaling to hide behind a parked Ford Focus. During this exchange of gunfire, Officer Garza believes he shot Craft. Seconds later, Craft emerged from behind the car, stumbled to the ground and crawled along one of the buildings. Officer Garza ran over to Craft and handcuffed him.
>
> About 20 seconds elapsed from the time Officer Garza first heard shots to when he apprehended Craft. Officer Garza then heard more gunfire to the northwest, in the alley along the lot. He testified that he told Officer Knotts to stay with Craft as he ran toward the shots in the alley.

---

[1] I am permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647-48 (7th Cir. 2018).

> Officer Garza never searched Craft for weapons. After the gunfire subsided, police collected 111 bullet casings at the scene. They discovered two guns in the alley. They also discovered three guns in Craft's locked Jeep Grand Cherokee, which was parked in the northwest corner of the lot. These included a 9-millimeter Glock handgun with an extended double-barrel magazine (Modified Glock).[2] The firearm examiner testified that 85 of the casings found at the scene were fired by the Modified Glock, which had been converted into an automatic weapon. Two of the bullet fragments recovered from Blackmon's body could be excluded from all the firearms collected at the scene except for the Modified Glock. DNA testing showed multiple people touched the weapons found at the scene, likely including Craft.

*Id.* at 342-43 (internal citations, headnotes, and footnotes omitted). Mr. Craft was charged and convicted of the murder of Blackmon and the attempted murder of Officer Garza. *Id.* at 344.

In his earlier complaint, Mr. Craft alleged an array of false arrest, malicious prosecution, and excessive force claims against Officers Garza and Knotts, as well as their employer the Gary Police Department. He claimed that he was unarmed on the date of this incident and "vehemently" denied that he committed murder or attempted murder. I determined that his claims were untimely, not cognizable, or barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). [DE 18.]

His current pleading has been narrowed to one claim of excessive force against Officer Garza. He alleges that around 2:30 a.m. on September 27, 2020, he was leaving the Nightclub Loft Adiq Ultra Lounge and was peaceably walking to his vehicle when he "overheard a seemingly heated argument taking place close by," at which point

---

[2] According to the state court, when Mr. Craft was arrested he was wearing a t-shirt that read, "Dads With Glizzies," which the court noted is slang for a Glock. *Craft*, 187 N.E.3d at 343 n.3.

3

gunfire "suddenly" erupted. [DE 19 at 2.] He states that he "ran for cover," but felt a "searing hot pain" in his leg. *Id.* He claims he continued to run for "better cover" but was shot two more times from behind. *Id.* He claims he began screaming for help, at which point he saw Officer Knotts, who allegedly handcuffed him. *Id.* He claims he did not have a weapon at this time. *Id.*

Craft further alleges: "Officer Garza later testified that he saw me fire a firearm into the crowd, and he saw a man drop to the ground. . . Officer Garza testified that he yelled for me to drop my weapon, that we exchanged gunfire, and that he then saw me run toward a parked car." [DE 19 at 2-3.] Mr. Craft claims that he was "shot numerous times, <u>all from behind</u>**.**" *Id.* at 3. In his view, "the fact that I was repeatedly shot in the back" automatically "constitutes a use of excessive force by Officer Garza." *Id.* As with his earlier pleadings, he states that "I have always contended that I did not have a weapon, and I'm innocent of my charges." *Id.* However, he claims these facts are not in dispute in his complaint, and that "[r]egardless of what Officer Garza claims I did and the jury convicted me of doing, Officer Garza used excessed force when he repeatedly shot me in the back." *Id.*

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, an officer's right to arrest an individual includes the right to use some degree of physical force, but the use of force must be objectively reasonable in light of the totality of the circumstances. *Graham v.*

4

*Connor*, 490 U.S. 386, 396 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citations and internal quotation marks omitted). Factors to consider include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was resisting arrest or attempting to evade arrest by flight. *Id.* In evaluating whether an officer used excessive force, courts must be "wary of hindsight bias and acknowledge the real challenges that officers regularly face on the job," which often require "split-second judgments to safeguard both the public and the responding officers in tense, uncertain, and rapidly evolving circumstances." *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) (citations and internal quotation marks omitted).

A police officer's use of deadly force is also governed by the "reasonableness" standard set forth in *Graham. Id.* "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Put another way, "[a] suspect has a constitutional right not to be shot by an officer unless the officer reasonably believes that the suspect poses a threat to the officer or someone else." *Ybarra v. City of Chi.*, 946 F.3d 975, 978 (7th Cir. 2020) (citation and internal quotation marks omitted).

A civil claim that necessarily implies the invalidity of an outstanding criminal conviction "must be dismissed without prejudice, because *Heck* holds that the claim does not accrue until the conviction has been set aside." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019). Excessive force claims are not always inconsistent with an outstanding conviction. *Id*. However, when the plaintiff's excessive force claim necessarily refutes the factual underpinnings for his conviction, the claim is barred by *Heck. Id.*; *see also Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016) (excessive force claim was barred by *Heck* because "if the incident unfolded as [the plaintiff] alleges in his civil suit, then he could not have been guilty of aggravated battery of a peace officer").

Mr. Craft walks a fine line in alleging his claim against Officer Garza in an attempt to avoid the adverse findings in the criminal case. He disavows any intention to dispute Officer Garza's testimony leading to his conviction, instead focusing on the fact that he was shot from behind, which in his view necessarily means the force used was excessive. However, "[t]he favorable-termination rule [in *Heck*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting . . . . Rather, it is grounded in substantive concerns about allowing conflicting judgments." *Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019). Based on the factual determinations made in the criminal case, which Mr. Craft cannot refute in this proceeding, Officer Garza faced a chaotic scene involving a man armed with a semiautomatic weapon shooting at people outside a crowded club. Officer Garza saw Mr. Craft shoot one man, who fell to

6

the ground. He yelled for Mr. Craft to drop his weapon, and instead of surrendering, Mr. Craft "turned his fire on Officer Garza." In their exchange of gunfire, Mr. Craft was shot. *Craft*, 187 N.E.3d at 344.

An officer, like Officer Garza, who reasonably believes that a "suspect poses a threat of serious physical harm" may use "deadly force . . . if necessary to prevent escape." *Garner*, 471 U.S. at 11–12, (1985). In light of Mr. Craft's outstanding conviction for the murder of one man and the attempted murder of Officer Garza, he does not have a plausible excessive force claim against Officer Garza. If, in the future, his conviction is set aside, overturned, or otherwise drawn into question, his excessive force claim may become cognizable. At this stage, however, the claim must be dismissed without prejudice. *Johnson*, 944 F.3d at 968.

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (citations omitted); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024-25 (7th Cir. 2013). However, "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (citation omitted). Mr. Craft has already had three opportunities to state his claims. I find no basis to conclude that if given another opportunity, he could assert a plausible excessive claim against Officer Garza while his criminal conviction remains outstanding.

**ACCORDINGLY:**

This action is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted.

**SO ORDERED**.

ENTERED: June 20, 2023.

                                            /s/ Philip P. Simon, Judge
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT